IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHAWN LEE ALLRED<br>a/k/a Shawn Schillinger Allred,<br><br>Petitioner,<br><br><br><br>vs.<br><br><br>UNITED STATES OF AMERICA,<br><br><br>Respondent. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br><br>Case No. 2:08-CV-245<br>*Related to Case No.*: 2:03-CR-1011<br><br>Judge Clark Waddoups |

On March 28, 2008 federal inmate Shawn Lee Allred ("Allred") filed a *pro se* motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. With one exception, Allred has failed to adequately demonstrate entitlement to relief on the claims asserted. Accordingly, his motion is denied, except for Allred's claim regarding involuntary medication. The court strikes the special condition for supervised release requiring Allred to take all prescribed mental health medication.

## BACKGROUND

A federal grand jury indicted Allred on December 30, 2003 for multiple federal firearm violations. A grand jury returned a Superceding Indictment on July 27, 2005, and Allred subsequently entered "not guilty" pleas to all counts. On October 4, 2007, a jury found Allred "guilty" of four counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and two counts of possession of an unregistered sawed-off shotgun in violation of 26

U.S.C. § 5861(d)(3).  On February 7, 2006, the court sentenced Allred to 188 months prison, and the U.S. Court of Appeals for the Tenth Circuit has affirmed that sentence.  Allred now seeks habeas relief for ineffective assistance of counsel, lack of jurisdiction, and violations of due process and the Confrontation Clause.

## ANALYSIS

### I.    STANDARD OF REVIEW

Because Allred is proceeding *pro se*, the court must construe his pleadings liberally.[1]  Allred still has the burden, however, to allege "sufficient facts on which a recognized legal claim could be based," and it is not proper for the "court to assume the role of advocate for the pro se litigant."[2] "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[3]

### II.   INEFFECTIVE ASSISTANCE OF COUNSEL

For Allred to prevail on his ineffective assistance of counsel claim, he must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[4]  "[A] strong presumption [exists] that counsel's conduct falls within the wide range of reasonable professional assistance," and that counsel's actions constituted "sound trial strategy.'"[5]  Allred must overcome this presumption.  Additionally, Allred "must show

---

[1]  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2]  Id.

[3]  Id. (citations omitted).

[4]  Strickland v. Washington, 466 U.S. 668, 687 (1984).

[5]  Id. at 689 (quotations and citation omitted).

that the deficient performance prejudiced [his] defense."[6]  To establish prejudice, Allred "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[7]

Allred asserts he had ineffective assistance of counsel because his counsel:  (A) failed to call necessary witnesses, (B) failed to object to hearsay evidence and properly cross-exam witnesses, (C) failed to dismiss a biased juror, (D) allowed the jury to believe Allred was in actual possession of the firearms or that access to firearms constitutes possession, (E) improperly waived Allred's right to testify, (F) breached the attorney-client privilege by participating in private meetings without Allred's presence, (G) failed to appeal rulings on certain motions, and (H) failed in miscellaneous other ways.

### A.    Failure to Call Necessary Witnesses

Allred contends his counsel failed to call fourteen "vital" witnesses.[8]  He provided a list of witnesses he alleges should have been called because they "had a part in the original case."[9]  Allred fails to identify, however, how the testimony of these individuals makes it reasonably probable that, if they had been called, the result of the proceeding would have been different.  As to seven of the witnesses, Allred provides no explanation about why their testimony is relevant.  For the remaining seven, Allred provides little detail about what the testimony would be.  What he does provide fails

---

[6]  Id. at 687.

[7]  Id. at 694.

[8]  Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, Ex. 1 at 18, 81 (Civil Docket - No. 1) (hereinafter "Habeas Corpus Motion").

[9]  Id., Ex. 1 at 81.

to meet the <u>Strickland</u> standard.

He alleges that "Sid Swayse did not see [him] point a gun at Martin, nor did he ever see [him] with a gun."[10] Had Sid Swayse testified to this at trial, it would not have changed the fact that numerous firearms and ammunition were found on Allred's property. Allred also alleges that Shaun Bell, Gail Jensen, and Georgette Leventis should have been called to testify about evidence that Allred's parole officer attempted to blackmail him. Even if one were to accept, however, that Allred's allegations are true, no reasonable probability exists that the outcome at trial would have been different. Besides the parole officer, other witnesses testified that Allred had firearms on his property. The government also introduced a letter that Allred wrote about other firearms he had stowed on his father's property. This evidence makes it improbable that the outcome of the case would have been altered.

Allred also wanted witnesses called to testify that he was not the owner of all of the firearms and that the property on which they were found was owned by another. Allred was convicted for possession of firearms and ammunition. Testimony about ownership therefore would not change the facts about Allred's possession of the weapons. Additionally, Allred stipulated that he was in the process of purchasing the property, and testimony from multiple witnesses identified the property as his. Thus, even if Allred could show that another somehow technically owned the property, Allred had possession of the property, was living and working at the property, and had possession of firearms on that property. Finally, Allred asserts that FBI Special Agent Francis "had information on the case."[11] Allred has failed to identify what information the agent had, how his counsel erred

---

[10] <u>Id.</u>, Ex. 1 at 8.

[11] <u>Id.</u>, Ex. 1 at 18.

in not presenting it, and how it likely would have altered the case.  Allred therefore has not overcome the presumption that his counsel's actions constituted sound trial strategy.

### B.      Hearsay and Cross-Examination of Witnesses

Next, Allred contends that his counsel failed to object to hearsay evidence.  Allred has not identified, however, when his counsel failed to object at trial and how it is reasonably probable that it altered the outcome of the case.  Merely asserting that Allred's counsel failed to make hearsay objections is insufficient to support this allegation.

Likewise, Allred's contention that his counsel failed to cross-exam witnesses adequately is not supported by the record.  Allred contends that his parole officer was "blackmailing" him and that two of the witnesses had a personal interest in providing testimony so they could avoid criminal charges.  Allred's counsel addressed the "blackmail" issue during his cross-examination of Allred's parole officer and the examination of two other witnesses.  The jury had the opportunity to judge their credibility.  Allred's counsel also cross-examined William Martin and Deborah Golden (Allred refers to "Golden" as "Gulden" in his briefing).  Allred contends these two witnesses had a personal motive to testify.  The jury, however, had the opportunity to judge their credibility as well, especially since Allred's counsel pointed out during cross-examination the inconsistent statements that Golden had made.  Allred, therefore, has failed to demonstrate that his counsel did not cross-exam the witnesses properly.

### C.      Failure to Dismiss a Juror

Allred further contends that his counsel was ineffective because he did not remove a biased juror.  A defendant does have a right to a jury that is fair and impartial.  "The constitutional standard," however, "for juror impartiality is whether the juror 'can lay aside his opinion and render

a verdict based on the evidence presented in court.'"[12]  Here, Allred alleges that one juror had been a juror on a previous case where a defendant was convicted of murder and that Allred's counsel had represented that defendant.  Consequently, Allred wanted that juror removed and he contends his counsel was ineffective when he allowed the juror to remain on the jury.  "On habeas review, courts give 'particular deference' to counsel's judgment during *voir dire*."[13]  Nothing that Allred has alleged demonstrates that his counsel exercised improper judgment during jury selection.  The mere fact that a juror participated on another jury where a defendant was convicted does not show that the juror was unable to render a verdict based on the evidence.  Thus, keeping the juror on the jury did not constitute ineffective assistance of counsel.

### D.    Possession of Firearms and Ammunition

Allred also contends that his counsel erred in allowing the jury to believe he was found in actual possession of the firearms or that access is possession.  Allred misapprehends the law.  To be found guilty of possession, one need not be in actual possession of a firearm—constructive possession is sufficient.  "Constructive possession exists where the defendant has the power to exercise control or dominion over the item."[14]  Dominion and control "may be inferred if a defendant had exclusive possession of the premises where the object is found."[15]  Allred stipulated at trial that he was purchasing the property.  Witnesses testified that he lived and worked on the property.

---

[12] United States v. Thatcher, No. 93-4152, 1994 U.S. App. LEXIS 14391, *3 (10th Cir. June 10, 1994) (quoting Patton v. Yount, 467 U.S. 1025, 1037 n.12 (1984)).

[13] Saunders v. United States, No. WDQ-08-0874, 2008 U.S. Dist. LEXIS 67427, *10 (D. Md. Sept. 2, 2008) (citation omitted).

[14] United States v. Frost, 318 Fed. Appx. 664, 667(10th Cir. 2009) (quotations, citation, and alteration omitted).

[15] Id. (quotations and citation omitted).

Although one guest stayed at the property for two weeks, that person testified she did not own any of the weapons found on it. A jury could reasonably conclude from this evidence that Allred had at least constructive possession of the firearms and ammunition on his property. Thus, Allred's counsel did not err on what constitutes possession of a firearm.

### E. Waiver of Right to Testify

Based on the trial transcript, it is apparent that Allred initially had the intention to testify at trial. It is equally apparent that Allred chose to waive that right. Outside the presence of a jury, the court explained to Allred his right to testify. Allred said "I can't testify."[16] Even after making this statement, the court allowed Allred further time to consult with his attorney. Based on this evidence, the court concludes that Allred gave up his right to testify and that his counsel did not improperly waive this right.

### F. Breach of Confidential Information

Allred also claims that his attorney provided ineffective assistance by breaching confidential attorney-client relations when his counsel had private discussions with the prosecution without Allred's consent. Allred asks the court to look to "[l]ook to record of sentencing where this is plainly admitted by the government attorney, Kevin Sundwall."[17] The sentencing record does not support Allred's contention, and Allred provides no other facts to support his contention.

Allred further claims that his counsel violated confidential relations when he participated in closed-chambers meetings without his consent. The trial transcript does record a conference held in chambers while the prospective jurors were being brought into the courtroom. Rule 43(b)(3) of

---

[16] Trial Transcript, at 219 (Criminal Docket - No. 106).

[17] Habeas Corpus Motion, Ex. 1 at 17 (Civil Docket - No. 1).

the Federal Rules of Criminal Procedure specifies, however, that when a conference or hearing pertains only to a question of law, the defendant's presence is not required.[18]  Moreover, when a defendant is excluded "from a trial proceeding," the exclusion "should be considered in light of the whole record."[19]  In this case, the conference held in chambers addressed questions of law.[20]  On the issues pertaining to admissibility of evidence, the court left open the right for Allred's counsel to object to evidence he thought was improper.  Consequently, the lack of Allred's presence at that conference did not violate any confidential relationship, nor does the record support that Allred's counsel was ineffective during that conference.

### G.      Failure to Appeal the Denial of Certain Motions

#### 1.      Motion to Suppress

Additionally, Allred contends that his counsel failed to appeal the denial of his motion to suppress.  Allred moved to suppress on the basis that the search warrant listed an incorrect address.  A search "warrant must describe the place to be searched with sufficient particularity so that the executing officer can locate and identify it with reasonable effort."[21]  "The requisite specificity," however, "differs for rural and urban areas and depends heavily on the facts of each case."[22]  Moreover, "practical accuracy rather than technical precision controls the determination of whether

---

[18]  Fed. R. Crim. P. 43(b)(3).

[19]  United States v. Gagnon, 470 U.S. 522, 526–27 (1985) (citation omitted).

[20]  Trial Transcript, 4–7 (Criminal Docket - No. 105).

[21]  United States v. Dorrough, 927 F.2d 498, 500 (10th Cir. 1991) (citation omitted).

[22]  Id. (citation omitted).

a search warrant adequately describes the premises to be searched."[23]

Here, Allred claims his correct address was 475 South,[24] but the search warrant listed his address as 487 South.  When Allred filed his motion to suppress, the government opposed the motion and provided a notarized statement from Ferron City to confirm that Allred's address of record was 487 South at the time of the search.[25]  Ferron City is a small, rural community.  The affiant for the search warrant was Allred's parole officer, who visited Allred at the property multiple times.  He described the property as containing a white Ford pickup truck, motor home, and mobile home.  Due to this practical accuracy, there was little chance of error that the parole officer and other officers would search the wrong property.  Moreover, Allred's parole terms indicated his property could be searched at any time, without a warrant, based on reasonable suspicion.[26]  The affiant attested that a person had reported gun shots on the property, and one of Allred's conditions for release was that he not possess any firearms.[27]  Additionally, another person stated that Allred had pointed a gun at him on the property.  These facts are sufficient to support a reasonable suspicion that Allred was violating the terms of his parole.  Thus, even if Allred's counsel had filed an appeal on the motion to suppress, it is not reasonably probable that the evidence actually would have been suppressed.

---

[23] Id. (citing United States v. Ventresca, 380 U.S. 102, 108 (1965)).

[24] Allred provided a utility bill to support his present motion, which does list his address as 475 South.  The date of the bill, however, was January 12, 2004, approximately five months after the search was done.

[25] See Letter, dated Sept. 26, 2005 (Criminal Docket - No. 52, Ex. 3).

[26] Parole Agreement, ¶ 5 (Criminal Docket - No. 52, Ex. 2).

[27] Id. ¶ 6.

2.      Motion to Dismiss Based on Speedy Trial

Allred further contends his counsel should have appealed the denial of his motion to dismiss based on speedy trial violations because he was arrested in August 2003 but did not see a magistrate judge until February 2004.  The Speedy Trial Act (the "Act") is a federal statute that only applies to federal arrests and prosecutions.[28]  Consequently, the time limits under the statute are not triggered by a state arrest.[29]  "[T]he Act is consistent with the doctrine of dual sovereignty, which recognizes that the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible."[30]

Here, Allred was arrested by the State of Utah in August 2003.  The United States, however, did not indict Allred until December 30, 2003, and an arrest warrant was issued on December 31, 2003.  On February 26, 2004, Allred had his initial appearance before a magistrate judge.  Because Allred's initial appearance occurred after the indictment was filed, the seventy-day time period started to run from the date of his initial appearance.[31]  By March 11, 2004, a motion for a competency and sanity evaluation was filed.[32]  This tolled the speedy trial time period.[33]  Allred was subsequently determined mentally incompetent to stand trial and was ordered to the Federal Bureau

---

[28]  United States v. Iaquinta, 674 F.2d 260, 264 (4th Cir. 1982).

[29]  Id.

[30]  Id. (quotations and citations omitted).

[31]  18 U.S.C. § 3161(c)(1) (2006); United States v. Wilson, 720 F.2d 608, 609 (9th Cir. 1983).

[32]  Motion for Competency and Sanity Evaluation (Criminal Docket - No. 14).

[33]  18 U.S.C. § 3161(h)(1)(A), (D) (2006).

of Prisons to determine whether his competency could be restored.[34]  This time also was excluded.[35]

Additionally, Allred filed a number of others motions, which further tolled the speedy trial time

period.

On April 6, 2005, a hearing was held regarding Allred's competency status as a defendant.

The court concluded that Allred was competent to stand trial.   An issue remained, however,

regarding whether Allred was sane at the time of the offense.  Consequently, Allred was sent again

to a medical facility for this evaluation.  The court excluded the time between April 6, 2005 and his

next sanity hearing pursuant to 18 U.S.C. § 3161(h)(1)(A).[36]

On July 27, 2005, a superceding indictment was filed, which added an additional count.

Allred returned from the competency evaluation and was arraigned on September 7, 2005.  As of

September 7, 2005, the sanity hearing had not been held.  Trial commenced on October 3, 2005 due

to Allred's request for a speedy trial.[37]  Based on this record, it is apparent that the seventy-day time

period did not run before trial commenced.  Therefore, regardless of whether Allred's counsel

appealed the denial of this motion, it would not have altered the outcome of this case.

### H.    Other Allegations

Allred baldly asserts other allegations about ineffective counsel.  Such bald assertions fail

to provide the necessary factual basis to make his claims plausible.  Accordingly, the court concludes

---

[34]  Order, 2 (Criminal Docket - No. 22).

[35]  18 U.S.C. § 3161(h)(4).

[36]  Order, 2 (Criminal Docket - No. 32).

[37]  On the date of trial, counsel stipulated to Allred's sanity at the time of the offense based on the psychological reports, and the court found Allred competent to stand trial based on the same information. Trial Transcript, 4–5 (Criminal Docket - No. 105).

that Allred has failed to carry his burden of showing ineffective assistance of counsel.

## III.    LACK OF JURISDICTION

Allred further claims that the court lacked jurisdiction because of improper search, arrest and detention.  He also claims the court lacked jurisdiction based on ownership of the property.  Finally, Allred asserts this was a local matter and that he should have been before a local judge.  Allred's jurisdictional claims lack merit.

The court has already addressed whether the search of Allred's property was proper, and therefore, will not readdress it here.  Allred's arrest and detention came about because of his parole violations.  The United States Supreme Court has stated "that the revocation of parole is not a part of the criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."[38]  While a defendant must be afforded due process, this does not mean that the defendant has the right to appear before a local judge.  Rather, in Utah, it is typically the board of pardons that revokes parole and determines the new period for release.[39]  Allred has not alleged he was denied a parol board hearing.  Thus, the court finds nothing improper in his arrest and detention at the State Prison.

Allred fails to state how ownership of the property impacts jurisdiction, other than to claim that Utah did not cede jurisdiction to the United States, and thus, the United States did not acquire the land.  As stated previously, Allred has the burden to state sufficient facts upon which a legal claim could be based.  Because Allred has not done so on this point, the court will not address the

---

[38]  Morrissey v. Brewer, 408 U.S. 471, 480 (1972).

[39]  See Neel v. Holden, 886 P.2d 1097, 1101 (Utah 1994).  The court cites to Utah law because Allred's parol was revoked by the Utah Board of Pardons.  See Special Attention Review (Civil Doc. No. 1, Ex. 1 at 50).

issue.

Finally, Allred asserts his firearm possession was a local matter.  While Allred is correct that it began as a local matter, when a local investigation reveals that a person has violated federal law, those violations may be referred for federal prosecution.[40]  Further, both statutes under which Allred was convicted are federal statutes.  Federal courts have jurisdiction to hear cases that are brought pursuant to federal statute.  Moreover, Allred's challenge about the constitutionality of 18 U.S.C. § 922(g)(1) has been rejected by the Tenth Circuit Court of Appeals.[41]  Accordingly, the court had proper jurisdiction to hear the case.

## IV.    VIOLATION OF DUE PROCESS

Allred also alleges his due process rights were violated.  He repeats some of the same allegations addressed above, and the court will not readdress them here.  Allred also raises the following new allegations: (A) the indictment was deficient, (B) he was denied the counsel of his choice, (C) he was denied appropriate competency evaluations and hearings, (D) the sentencing proceeded improperly, and (E) he was improperly ordered to take medications.

### A.    Deficient Indictment

Allred contends his due process rights were violated because the indictment lacked the jurisdictional element and did not mention enhanced sentencing as required.  Rule 7(c)(1) of the Federal Rules of Criminal Procedure specifies that an indictment must contain "a plain, concise, and

---

[40] United States v. Gines, 964 F.2d 972, 976 (10th Cir. 1992) (stating due process is not violated when a case is referred for federal prosecution because "defendant could conceivably be convicted in state court and *also* in federal court for the same illegal conduct, with no resulting constitutional violation." (emphasis in original) (citation omitted)).

[41] United States v. Dorris, 236 F.3d 582, 584–86 (10th Cir. 2000) (upholding 18 U.S.C. § 922(g)(1) as constitutional despite more recent Supreme Court rulings narrowing the Commerce Clause).

definite written statement of the essential facts constituting the offense charged."[42]  It also must cite

to the "provision of law that the defendant is alleged to have violated."[43]  Because "the existence of

a prior conviction is merely a sentencing factor," however, "and not a separate element of the

offense," it does not have to "be pled in an indictment."[44]

The Superceding Indictment in this case specified the alleged crimes occurred in the Central

Division of the District of Utah.  It also specified the sections of federal statute under which Allred

was being charged and it listed the essential elements of the charged crimes.  This is all that was

required.  Thus, the Superceding Indictment was not deficient.[45]

### B.     Failure to Replace Counsel

Allred claims that he was denied due process because he was denied his fundamental "right

to be represented by counsel of his own choice."[46]  When a person has funds to retain his own

counsel, it is true that he has a qualified right to be represented by the counsel of his choice.[47]  When

a defendant lacks funds to retain counsel, however, he does not have a right to choose his own

counsel.[48]  Rather, the Sixth Amendment simply "guarantees defendants in criminal cases the right

---

[42]  Fed. R. Crim. P. 7(c)(1).

[43]  Id.

[44]  United States v. Madrid-Beltran, 240 Fed. Appx. 284, 287 (10th Cir. 2007) (citing Almendarez-Torres v. United States, 523 U.S. 224, 228–35 (1998)).

[45]  Allred also asserts it was error not to inform the jury that he was facing an enhanced sentence.  This is incorrect.  A jury's role is to determine whether a defendant is guilty or not guilty. In making this determination, a jury is not to consider the sentence that a defendant may face.

[46]  Habeas Corpus Motion, Ex. 1 at 22 (Civil Docket - No. 1).

[47]  Burton v. Renico, 391 F.3d 764, 771 (6th Cir. 2004) (citations omitted).

[48]  Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989).

14

to adequate representation."[49]

At Allred's criminal arraignment, he filed paperwork stating that he was indigent and orally requested appointed counsel.[50] At the time of trial, Allred was on his second appointed attorney, who adequately represented Allred according to the court's findings above.  On the second day of a two day trial, however, Allred asked the court for a new attorney.  He stated he was "going to have to try to hire my own attorney.  I have been talking to a couple of them . . . ."[51]  He then said, "If I can't get one of the ones that I'm talking to, I expect a couple to be sent to talk to me."[52]

These statements show that Allred had not retained counsel when he made the request for new counsel.  Instead, he wanted an unspecified length of continuance of the trial while he tried to locate one.  They further show that the request was untimely.  The jury was seated, testimony had been taken, and the trial was scheduled to conclude on the day Allred requested new counsel.  Due to the disruption this would have caused in the trial, the court likely would have had authority to deny this request even if Allred had already retained new counsel.[53]  The court therefore concludes that Allred was not denied due process under these circumstances.

## C.    Competency Evaluation and Hearings

Allred contends his due process rights were violated because his competency evaluations

---

[49]  Id.

[50]  See Minute Entry (Criminal Docket - No. 6); Financial Affidavit (Criminal Docket - No. 7).

[51]  Trial Transcript, 150–51 (Criminal Docket - No. 106).

[52]  Id. at 151.

[53]  Morris v Slappy, 461 U.S. 1, 11–12 (1983) (stating "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a *justifiable request* for delay violates the right to the assistance of counsel." (emphasis added) (quotations and citation omitted)).

were conducted at an out-of-state facility rather than at the Utah State Hospital. Federal statute provides that when a defendant is sent to a medical facility for evaluation the "psychiatric or psychological examination shall be conducted in *the suitable facility* closest to the court."[54] The Federal Bureau of Prisons has no medical facility in Utah. It therefore was necessary to send Allred out-of-state. The court determined the most suitable facility was in Massachusetts. The court recommended that facility for the evaluations so Allred could have family visitations.[55] It also recommended that facility based on a finding that it was in Allred's best interest due to the nature and complexity of the case.[56] Thus, the court recommended placement in a facility that best met his particular circumstances.

With respect to hearings, the court did conduct two hearings regarding Allred's competency and the parties stipulated to his sanity based on the last report that was received.[57] The court finds that Allred was afforded due process on the issue of his competency.

**D.    Sentencing**

Allred also contends he was denied due process because the court failed to hold a hearing to address untrue statements in the pre-sentence report. Allred filed a twenty-three page Objection to the pre-sentence report that outlined in detail the issues he had with the report and the proposed sentencing. Allred's attorney also filed an Objection to the report because it recommended enhanced sentencing. The court considered the objections before sentencing, and the sentencing has been

---

[54]  18 U.S.C. § 4247(b) (2006).

[55]  Minute Entry (Criminal Docket - No. 21); <u>see also</u> Order, 1 (Criminal Docket - No. 32).

[56]  Order, 1 (Criminal Docket - No. 32).

[57]  Trial Transcript, 4–5 (Criminal Docket - No. 105).

upheld by the Tenth Circuit Court of Appeals.  Accordingly, Allred was not denied due process when the sentencing proceeded based on the pre-sentence report.

**E.      Order to Take Medication**

Allred also contends that he was denied due process when he was ordered to take medication without a proper hearing.  Allred has failed to identify to what order he is referring.  The court notes, however, that at sentencing Allred was ordered to participate in a mental health treatment program and to "take any mental health medications as prescribed."[58]  It is unclear whether Allred objected to this specific special condition.  He did, however, in his objections to the presentence report raise an objection to being required to take psychotropic and other mental health medications.  Given the liberality required in construing *pro se* filings, the court finds the objection sufficient to properly raise the issue.

Because some mental health medications may touch on a liberty interest that Allred has, he cannot be required to take mental health medication as a special condition of his supervised release without a hearing on the issue.[59]  Accordingly, the court strikes the sentencing condition that Allred is required to take prescribed mental health medications.  If it is determined, however, once Allred is placed on supervised release, that such medication is necessary for the safety of Allred or others, and Allred refuses to voluntarily follow the direction of the medical professional to take such medication, a motion may be filed by the government to address that issue.

---

[58]  Sentencing Transcript, 19 (Criminal Docket - No. 107).

[59]  See United States v. Cope, 527 F.3d 944, 953–54 (9th Cir. 2008); United States v. Holman, 532 F.3d 284, 288–89 (4th Cir. 2008); Bundy v. Stommel, 168 Fed. Appx. 870, 873 (10th Cir. 2006).

## V.    CONFRONTATION CLAUSE

Allred further asserts that he was denied his rights under the Confrontation Clause. Specifically, Allred asserts the following:

> There were several witnesses needed for Defense cross examination as their statements were used as hearsay evidence and harshly misused — Sid Swayse did not see the Defendant with a Gun Nor Point one at anyone and it was used that he did in Governments evidence of fact against the Defendant.  There are more.[60]

"The Confrontation Clause bars admission of testimonial statement of a witness who did not appear at trial . . . ."[61]  Although this is a strong protection, "the Confrontation Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[62]

Here, Allred's parole officer testified that he received information from Ferron City's mayor about Allred.  This led the parole officer to interview a city employee, Sid Swayse, which then led to an interview with William Martin.  This information was provided, not for the truth of the matter asserted, but to explain why Allred's parole officer searched Allred's property for firearms.  Thus, the Confrontation Clause did not require that the Ferron City mayor and Sid Swayse be called to the stand as witnesses.  Moreover, no where in the trial transcript does it say that Sid Swayse saw Allred with a gun.  This simply was not part of the testimony presented to the jury.

Allred's parole officer also testified about what William Martin told him during the parole officer's investigation.  Again, this testimony was largely foundational in nature.  Nevertheless, William Martin was then called to the stand to testify about his personal experience with Allred.

---

[60]  Habeas Corpus Motion, at 9 (Civil Docket - No. 1).

[61]  Wilson v. Sirmons, 536 F.3d 1064, 1111 (10th Cir. 2008) (quotations and citation omitted).

[62]  Id. (citations and alterations omitted) (ellipses in original).

Consequently, Allred was afforded the right to confront this witness.

It bears noting that other witnesses testified that they also found firearms and ammunition on Allred's property. Additionally, Allred wrote a letter, after his arrest, to William Martin stating, "don't worry, they didn't get the gun that you gave me because it was at my dad's with the rest of Justin's *and my guns*."[63] Allred's father testified that Allred did indeed store guns at his home, and that Allred had free access to the storage area.[64] Allred's father gave the firearms to Allred's parole officer and a deputy after Allred's arrest. From this, a jury had ample evidence to conclude that Allred was guilty of possessing firearms.

## VI.   OTHER ALLEGATIONS

Besides the allegations asserted above, Allred also asserts his sentence should be reversed based on the following grounds: insufficient investigation; blackmail; excessive force; improper arrest; Jencks; violating *Brady* by withholding discovery; malicious prosecution; bias on the part of the judge; improper jury instructions; improperly informing the jury he was a felon; failing to afford him post-trial hearings on motions for mistrial and new trial; counsel's failure to provide mitigating information at sentencing; double jeopardy; and the unconstitutionality of the statute under which he was charged because it exceeds the scope of the Commerce Clause.

### A.   Status as a Felon

Allred contends it was prejudicial to inform the jury that he was a convicted felon. The jury had to be informed of this fact, however, because it was an element of four of the counts. Moreover,

---

[63] Trial Transcript, 177 (Criminal Docket - No. 106) (emphasis added).

[64] Id. at 214–15.

the parties stipulated that he was a convicted felon.[65]  Allred therefore cannot claim jury bias based on the disclosure of this fact.

### B.    Double Jeopardy

Allred also contends his sentence is inappropriate because he has already served time in state custody for the same violations.  Due to possession of firearms, Allred was arrested for a parol violation and served time under a *remaining* state sentence.[66]  He therefore did not serve time for the same crime.  Nevertheless, even if Allred was charged in the state and federal courts for the same acts, double jeopardy does not arise due to the dual sovereignty doctrine.  "Under the dual sovereignty doctrine, a defendants may be prosecuted for a violation of federal law by the federal government following conviction in state court under state law for a crime arising out of the same acts or occurrences."[67]  Allred therefore has failed to establish a double jeopardy violation.

### C.    Remaining Allegations

The remaining allegations either have been addressed in other portions of this decision or they are merely conclusory allegations without supporting facts.  As stated above, a bald assertion without supporting facts is insufficient to state a plausible claim.  Accordingly, the court holds that Allred's remaining allegations are insufficient to state a plausible claim.

### CONCLUSION

For the reasons set forth above, Allred's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is GRANTED IN PART and DENIED IN PART.  The court strikes

---

[65]  Trial Transcript, 142–43 (Criminal Docket - No. 105).

[66]  Habeas Corpus Motion, Ex. 1 at 28 (Civil Docket - No. 1).

[67]  United States v. Gonzalez, No. 96-3083, 1997 U.S. App. LEXIS 345, *7 (10th Cir. Jan. 9, 1997) (citations omitted).

the condition that Allred is required to take all prescribed mental health medication as a special condition of supervised release.  The court denies all other relief that Allred seeks, and this case is now closed.

SO ORDERED this 3rd day of December, 2009.

BY THE COURT:

Clark Waddoups
United States District Judge